**Mario ESCANDAR, Ortelio Jesus Pineda, Eduardo Iglesias and Raunel Ramos, Petitioners,**

v.

**The Honorable Wilkie FERGUSON, as Judge of the Eleventh Judicial Circuit of Florida and Jack Sandstrom, Director, Dade County Jail, Respondents.**

**No. 77–3826–Civ–WM.**

United States District Court, S. D. Florida.

Oct. 5, 1977.

Bierman, Sonnett, Beiley, Shohat & Osman, P. A., Donald I. Bierman, Miami, Fla., for Mario Escandar; by Michael J. Osman, Miami, Fla.

Fine, Jacobson, Block, Goldberg & Semet, P. A., Miami, Fla., for Ortelio Jesus Pineda.

Lister Witherspoon, IV, Miami, Fla., for Eduardo Iglesias.

Stan E. Cushman, Miami, Fla., and Henry Gonzalez, Tampa, Fla., for Raunel Ramos.

David M. Waksman, Louis X. Casuso, Lance R. Stelzer, Asst. State Attys., Miami, Fla., for respondents.

OPINION AND ORDER

MEHRTENS, Senior District Judge.

I

STATEMENT OF THE FACTS

On July 16, 1977, the Petitioners, Mario Escandar, Ortelio Jesus Pineda, Eduardo Iglesias and Raunel Ramos, were arrested and charged with, among other offenses, the two life felonies of kidnapping and armed robbery.

On July 17, 1977, the Petitioners appeared before Committing Magistrate Marshall Ader, who, after examination of the Petitioners, set bond in the amount of $100,000.00 for the Petitioner Escandar, and $75,000.00 for each of the remaining Petitioners. The Petitioners posted said bond and at the time, were released from custody.

On July 20, 1977, the State's Motion to Revoke Bond was presented to the Honorable Judge Ferguson, but was denied at that time because no State Criminal Information had yet been filed.

On July 21, 1977, a State Criminal Information was filed charging, among other offenses, the identical crimes of kidnapping and armed robbery for which the Petitioners had previously been arrested.

On July 22, 1977, a hearing was held before the Honorable Judge Ferguson. The alleged victim, Francisco Quintana, testified, and upon the conclusion of said testimony, the court was of the opinion that the Petitioners had not sustained *their* burden of establishing that proof of their guilt was not evident, and the presumption thereof not great.

At the conclusion of the hearing on July 22, 1977, the court recommitted the Petitioners pursuant to Rule 3.130(a), (h)(4) of the Florida Rules of Criminal Procedure.

On August 12, 1977, the Petitioners filed a timely Motion for Bail After Recommitment Order of July 22, 1977.

In said Motion, the Petitioners contended that the court had the jurisdiction and power to grant reasonable bail to a defendant charged with a life felony where proof of guilt is evident and the presumption great when upon consideration of the totality of all relevant facts and circumstances, the court is convinced that a reasonable bond will adequately assure that the Defendant

will appear before the court at all times that his appearance is required. The Petitioners contended that neither Article I, Section 14 of the Florida Constitution[1] nor Rule 3.130(a) of the Florida Rules of Criminal Procedure,[2] prohibit the court to exercise its discretion to grant bail under the circumstances just stated, notwithstanding that Petitioners had no *absolute* right to bail.

The Petitioners also contended that the failure of the court to accept any evidence that the Petitioners are a good bail risk, constituted a denial of the Eighth Amendment's prohibition against excessive bail made applicable to the states through the Fourteenth Amendment to the Constitution of the United States.

On August 15, 1977, the Petitioners' Motion for Bail After Recommitment was denied.

In its Order denying the Petitioners' Motion, the court ruled that it lacked the jurisdiction and power to grant reasonable bail to a Defendant charged with a life felony where proof of guilt is evident and the presumption great, even if the court was convinced that a reasonable bond would adequately assure that such a Defendant would appear before the court at all times his appearance would be required.

The court ruled that the Petitioners had not been deprived of their Eighth Amendment rights as made applicable to the States under the Fourteenth Amendment to the Constitution of the United States.

On August 19, 1977, the Petitioners filed a Writ of Habeas Corpus or Mandamus in the Florida District Court of Appeal, Third District, alleging that the above rulings were arbitrary, capricious, and unreasonable, and deprived the Petitioners of due process of law and equal protection of the laws as guaranteed by the Constitutions of the United States and the State of Florida. Furthermore, the Petitioners alleged that the above rulings deprived them of their Eighth Amendment rights as made applicable to the states under the Fourteenth Amendment to the Constitution of the United States.

The Florida District Court of Appeal, Third District, treated the Petitioners' Petition as a motion to review denial of bail. On August 26, 1977, after a hearing, the Motion was denied.

On August 30, 1977, the Petitioners filed a Writ of Habeas Corpus or Mandamus in the Supreme Court of Florida. The Petitioners alleged that the rulings of both the Honorable Wilkie Ferguson, Judge of the Eleventh Judicial Circuit of Florida, and the District Court of Appeal, Third District, were arbitrary, capricious, and unreasonable, and deprived the Petitioners of due process of law and equal protection of the laws as guaranteed by the Constitutions of the United States and the State of Florida.[3]

On September 12, 1977, while their Petition for Writ of Habeas Corpus or Mandamus was still pending in the Supreme Court of Florida, the Petitioners, pursuant to 28 United States Code, Section 2241 et seq., filed this Petition for Writ of Habeas Corpus. The Petitioners claimed that they were in custody in violation of both the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States, and that due to the Supreme Court of Florida's delay in passing upon their Petition for Writ of Habeas Corpus or Mandamus, the State corrective process had been rendered ineffective to protect their rights.

1. *Bail*—Until adjudged guilty, every person charged with a crime or violation of municipal or county ordinance shall be entitled to release on reasonable bail with sufficient surety unless charged with a capital offense or an offense punishable by life imprisonment and the proof of guilt is evident or the presumption is great.

2. *Offenses Less Than Capital*—All persons in custody for the commission of an offense unless it is a capital offense or an offense punishable by life imprisonment and the proof of guilt is evident or the presumption is great shall be entitled as of right to be admitted to bail before conviction. After conviction bail may be granted in the discretion of either the trial or appellate court.

3. The State conceded the factual accuracy of the Petition.

II

## EXHAUSTION OF STATE REMEDIES

■ It is axiomatic that in all cases under 28 United States Code, Section 2241 et seq., the threshold inquiry is whether there has been an appropriate exhaustion of available state remedies.

■ In the instant case, after the Petitioners' Motion for Bail After Recommitment was denied in the trial court, the Petitioners filed a Petition for Writ of Habeas Corpus or Mandamus in the Third District Court of Appeal of Florida. This was sufficient to satisfy the exhaustion requirement. *Lee v. Wainwright*, 468 F.2d 809 (5th Cir. 1972); *McCluster v. Wainwright*, 453 F.2d 162 (5th Cir. 1972).

Furthermore, on August 20, 1977, after relief was denied them in the Third District Court of Appeal, the Petitioners filed a Petition for Writ of Habeas Corpus or Mandamus in the Supreme Court of Florida. Even though this was not required to fulfill the exhaustion requirement, the Petitioners felt that since an issue of state constitutional interpretation was involved, any federal constitutional issues involved might be obviated by a favorable ruling from the Supreme Court of Florida.

As of September 12, 1977, the date the present Petition was filed, the Supreme Court of Florida had not ruled upon the merits of the Petitioners' claims.

■ The court finds that since the Petitioners continued incarceration will hamper the preparation of their defense, and since further delay in ruling upon their Petition will render their claim moot, the delay by the Supreme Court of Florida in ruling upon such Petition presents circumstances rendering the state remedy ineffective, thereby vesting this court with jurisdiction to provide the Petitioners with "a prompt remedy". *See, Fay v. Noia*, 372 U.S. 391 at 401–402, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); *Reynolds v. Wainwright*, 460 F.2d 1026 (5th Cir. 1972); *Lucas v. People of State of Michigan*, 420 F.2d 259 (6th Cir. 1970); *Moore v. Egeler*, 390 F.Supp. 205 (E.D.Mich. 1975); *Bobick v. Schaeffer*, 366 F.Supp. 503 (S.D.N.Y.1973).

III

## EQUAL PROTECTION

The court finds both the constitutional provision and rule of procedure involved in this case to be highly unintelligible and confusing. One reading of them is that the trial court has discretion to grant bond in a life felony case where the proof of guilt is evident and the presumption thereof great. The other reading of the constitutional provision and rule of procedure is that the trial court lacks discretion to grant bond in such cases.

If the constitutional provision and rule of procedure are interpreted as giving the trial court discretion to grant bond in life felony cases where the proof of guilt is evident and the presumption thereof great, then they are constitutional. If the constitutional provision and rule of procedure are interpreted as denying discretion to grant bond in such cases, as they were by both the trial court and the Third District Court of Appeal of Florida, then they are unconstitutional.

■ An analysis of the Petitioners' equal protection claim in this case must focus on four questions:

1. Does Florida's bail system create a classification?

2. If so, is that classification suspect or does it affect fundamental rights?

3. Is the State of Florida attempting to prompt a compelling governmental interest by making the classification? and

4. Are less restrictive means available to effectuate the desired end? *See Pugh v. Rainwater*, 557 F.2d 1189 (5th Cir. 1977).

A. The Court finds that the absolute denial of bail in this case denies the Petitioners, as defendants in a life felony case where the proof of guilt is evident and the presumption thereof great, equal treatment with that afforded defendants in non-life felony cases or life felony cases where the

proof of guilt is not evident nor the presumption thereof great. Therefore, the constitutional provision and rule of procedure create a classification.

B. The Court finds that this classification necessarily affects fundamental rights of the Petitioners. Foremost among these rights is the Petitioners' presumption of innocence. *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). As stated in *Pugh v. Rainwater*, 557 F.2d 1189 (5th Cir. 1977):

This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction. See *Hudson v. Parker*, 1895, 156 U.S. 277, 285, 15 S.Ct. 450, 453, 39 L.Ed. 424. Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning.

Furthermore, the court in *Pugh, supra*, recognized that:

Pretrial detention may also infringe upon an accused's right to a fair trial. Courts have long recognized that the "right to freedom before conviction permits the unhampered preparation of a defense". *Stack v. Boyle, supra*, 342 U.S. [1] at 4, 72 S.Ct. [1] at 3, 96 L.Ed. [3] at 6. As Mr. Justice Powell noted in *Barker v. Wingo*, 407 U.S. 514, 533, 92 S.Ct. 2182, 2193, 33 L.Ed.2d 101, 118 (1972), a leading speedy trial case, "if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense."

Since the classification in this case affects fundamental rights of the Petitioners, it can only be upheld if it promotes a compelling governmental interest and is the least restrictive means of effectuating this compelling governmental interest. *Dunn v. Blumstein*, 405 U.S. 330, 342, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); *Pugh v. Rainwater, supra*.

C. The *sole* governmental interest served by bail is to assure the presence of the accused at trial. This is a compelling interest. Although the State of Florida also has an interest in denying pre-trial release to a defendant who presents an unreasonable danger to the community, the function of bail is limited, and must be based upon standards relevant to the purpose of assuring the presence of the defendant. *Stack v. Boyle*, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951); *Pugh v. Rainwater, supra*.

D. The question now becomes whether the State of Florida has adopted "the least restrictive means" of achieving its compelling interest of assuring the appearance of criminal defendants at trial. The court finds in life felony cases where the proof of guilt is evident and the presumption thereof great, it has not.

The State of Florida has taken the position that in such serious cases the *only* relevant inquiry is the degree of proof on the criminal charge itself. Thus, once it is established that "the proof is evident and presumption great" no other inquiry is made as to the likelihood of a defendant's appearance at trial, and the court is foreclosed from considering the matter further.

Defendants charged with non-capital or life felonies are availed full hearings on all relevant issues such as ties to the community and prior record, as well as the seriousness of the charges. Under Florida procedure, defendants charged with capital and life felonies are denied these inquiries based on the misconceived notion that once it is established that the evidence is strong and the charge is serious they will not appear. Logic refutes the dogma that all defendants charged with serious offenses will not appear solely because the proof is strong.

■ Clearly, a less restrictive means of achieving the State's compelling interest is that urged by the Petitioners, *i. e.*, evidentiary hearings at which the trial court judges of Florida may, upon a totality of the circumstances in each individual case, exercise their sound judicial discretion as to whether or not an individual defendant will appear before the Court at all times that the defendant's presence is required. The Constitution will be more carefully served

by permitting the trial judge a whole cloth from which to fashion such a conclusion.

■ Furthermore, under Florida law, a defendant, convicted of first degree murder and sentenced to life imprisonment, is eligible for bond pending appeal. *See Hedden v. State*, 275 So.2d 52 (Fla. 2nd D.C.A. 1973). The court finds, as a matter of law, that it is totally unreasonable to deny bond to a defendant awaiting trial on a life felony charge where the proof is evident and the presumption thereof great, and then to allow bond to that same defendant after he has been proven guilty beyond a reasonable doubt.

■ Finally, in light of the fact that persons sentenced on a multi-count information to a term of imprisonment greatly in excess of the normal life expectancy, will, in many cases, actually serve a greater length of time than persons sentenced to life imprisonment,[4] the court can find no rational basis for allowing bail to these former persons while absolutely denying it to the latter.

## IV

## DUE PROCESS

■ Not only does the Florida procedure in this case violate the Equal Protection Clause of the Constitution, but the court finds that by imposing on Petitioners the unshakeable, irrebuttable presumption of non-appearance for trial, it offends the Due Process Clause as well. In Florida, a defendant charged with a capital or life felony who cannot himself[5] show that the proof is not evident nor the presumption great is presumed, as a matter of law without rebuttal, to be an unreasonable bail risk. The defendant may, in fact, be a perfectly good bail risk who would never fail to appear but, under the procedure Florida has adopted, he will not even be heard. Such an irrebuttable presumption

sweeps too broadly, and thereby violates the Due Process Clause of the Fourteenth Amendment.

As stated by the Supreme Court of the United States in *Vlandis v. Kline*, 412 U.S. 441 at 446, 93 S.Ct. 2230 at 2233, 37 L.Ed.2d 63 (1973): "permanent irrebuttable presumptions have long been disfavored under the Due Process Clause of the Fifth and Fourteenth Amendments". In *Vlandis, supra*, the Court declared unconstitutional a Connecticut statute mandating an irrebuttable presumption of nonresidency for the purpose of qualifying for reduced tuition rates at a state university. The Court held that:

> [I]t is forbidden by the Due Process Clause to deny an individual the resident rates on the basis of a permanent and irrebuttable presumption of nonresidence, when that presumption is not necessarily or universally true in fact, and when the State has reasonable alternative means of making the crucial determination. *Vlandis, supra* at 452, 93 S.Ct. at 2236.

Similarly, in *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), the Court struck down, as violative of the Due Process Clause of the Fourteenth Amendment, Illinois' irrebuttable statutory presumption that all unmarried fathers are unqualified to raise their children. The Court held that the State could not conclusively presume that any individual father was unfit to raise his children, and that the Due Process Clause required a hearing on that issue.

It is equally forbidden by the Due Process Clause to blanketly deny bail to the Petitioners on the basis of a permanent and irrebuttable presumption that they will not appear in court at all times their presence is required. That presumption is not "necessarily or universally true in fact", and the State, by affording a hearing on that issue,

---

4. The State of Florida has conceded at argument that the average term of imprisonment actually served by defendants convicted of life felonies is approximately eight (8) years. *See,* transcript of habeas corpus hearing at 16.

5. Under Florida law, the burden is on the defendant to prove that the proof is not evident or the presumption great. *Russell v. State*, 71 Fla. 236, 71 So. 27 (1916).

has "reasonable alternative means of making the crucial determination." *Vlandis, supra.* *See also Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) (mandatory termination provisions of maternity rules violate due process.)

## V

## CONCLUSION

For all of the aforementioned reasons, this cause is remanded to the state trial court with directions that he hold a full and complete hearing for the purpose of considering all of the factors set down in the Florida Statutes in passing upon bond for the Petitioners.